**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RANDOLPH SCOTT,

                              Plaintiff,

    vs.                                                  9:17-CV-520 (MAD/ATB)

CHRISTOPHER MILLER, et. al.,

                              Defendants.

---

RANDOLPH SCOTT, Plaintiff, pro se
DAVID A. ROSENBERG, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

### I.  Background and Procedural History

Plaintiff brought this action as the result of conduct which occurred at Great Meadow Correctional Facility. (Complaint ("Compl.")) (Dkt. No. 1). Plaintiff's original complaint generally alleged claims of excessive force and denial of constitutionally adequate medical care in violation of 42 U.S.C. § 1983,[1] together with violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794.

Plaintiff alleges that he suffers from severe and painful medical conditions in his feet, resulting in difficulty walking, and requiring the use of a cane. (Compl. at 4, 7). Judge D'Agostino conducted an initial review of plaintiff's complaint and issued a Decision and Order, dated June 29, 2017. (Dkt. No. 8). In that order, Judge D'Agostino

---

[1] Plaintiff's constitutional claims arose under the First, Eighth, and Fourteenth Amendments of the United States Constitution. (Compl. at 9).

reviewed the plaintiff's stated facts and grounds for relief, and after a lengthy analysis, ultimately dismissed some of plaintiff's claims while allowing others to go forward. (*Id.* at 7-19). Judge D'Agostino also denied plaintiff's request for preliminary injunctive relief. (*Id.* at 19-22).

The following claims survived Judge D'Agostino's initial review:

(1) ADA and RA claims against Superintendent Miller in his official capacity.

(2) Eighth Amendment excessive force claims against defendants Brady and Reynolds.[2]

(3) Eighth Amendment claims arising out of an alleged denial of recreation by defendant Miller.

On September 27, 2017, defendants filed a motion to dismiss in this action pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 28). After reviewing the file, together with the motion, I determined that the motion should be converted into one for summary judgment, and both parties should be given the opportunity to supplement their papers. (Dkt. No. 39).

On April 12, 2018, defendants filed their "Submission in Support" of the summary judgment motion, including various exhibits and declarations. (Dkt. No. 47). Included in these submissions are declarations together with related exhibits by Joseph Bonacci, the DOCCS Assistant Director of Classification & Movement (Dkt. Nos. 47-3, 47-4); Dr. David Karandy, M.D., the Facility Health Services Director at Great Meadow (Dkt. Nos. 47-5, 47-6); Phil Malecio, the Deputy Superintendent for Programming at Great Meadow (Dkt. Nos. 47-7, 47-8); Jeffrey Hale, the IGP Supervisor for DOCCS

---

[2] Sgt. Reynolds was originally named by plaintiff as a "John Doe" defendant, but was later identified and the complaint amended to substitute Reynolds for John Doe.

(Dkt. Nos. 47-9, 47-10); Rachael Seguin, the Assistant Director of the IGP for DOCCS (Dkt. Nos. 47-11, 47-12); and defendant Superintendent Miller (Dkt. Nos. 47-13, 47-14). On May 4, 2018, plaintiff filed his response to the defendants' submission. (Dkt. No. 51). The case is now ready for decision on the motion for summary judgment, and the court may consider the declarations and exhibits submitted by both parties.[3]

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is

---

[3] The court will also consider the materials originally filed with the motion to dismiss, together with any materials that plaintiff filed with his complaint. (Dkt. Nos. 1, 28).

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

### IV. Exhaustion of Administrative Remedies

#### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford*

4

*v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance."  *Id.* § 701.3(a) (Inmate's Responsibility).  There is also a special section for complaints of harassment.  *Id*. § 701.8.  Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own

actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 2016 WL 4572321 at *2. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

    **B.    Application**

        **1.    Alleged Assault on April 27, 2017**

In his complaint, plaintiff alleges that on April 27, 2017, he was on the first floor stairway to the school building, when he "accidentally" fell down the stairs, injuring his right knee. (Complaint ("Compl.") at 4). Plaintiff states that two inmates, who witnessed the incident took plaintiff to emergency sick call. (Compl. at 5). Plaintiff

6

claims that he was in an examination room in the medical department, when he was "assaulted" by defendant Brady, who slapped and punched plaintiff in the head and body while plaintiff sat on the examination table. (*Id.*) Plaintiff claims that defendant Brady kept asking him what he was "doing," and "can't you walk." Plaintiff states that he managed to get off the examination table, and defendant Brady put him in a headlock, punched and slapped him in the head, slammed plaintiff to the floor and handcuffed him. Plaintiff states that the assault lasted for fifteen minutes, and he did not resist, but tried to shield himself the best that he could. Plaintiff claims that, in order to "justify" the beating, defendant Brady wrote a misbehavior report against plaintiff, accusing plaintiff of being the aggressor. (*Id.*)

Plaintiff also claims that following the assault by Brady, and after Brady left the room, defendant Reynolds "appeared" in the examination room while plaintiff was still lying on the floor. (*Id.*) Plaintiff states that "a couple" of subordinates picked plaintiff up off the floor and placed his face against the wall. At that point, plaintiff alleges that defendant Reynolds deliberately threw plaintiff's glasses on the floor, "stomped" on them and broke them into small pieces. (Compl. at 5-6). Defendant Reynolds allegedly said "see that ass hole, now grieve that . . . ." Defendant Reynolds then allegedly slapped and punched plaintiff in the face, head, and body, while he was still handcuffed. The "subordinates" dared plaintiff to come off the wall, and they held plaintiff up while defendant Reynolds assaulted plaintiff for approximately fifteen minutes. (Compl. at 6). Defendant Reynolds then took photos of plaintiff's injuries, claiming that plaintiff initiated the assault. (*Id.*)

In the body of his complaint, plaintiff alleges that he filed "grievances" for

7

transfer to another facility, and for "assaults, batteries [sic] within last month," specifically by C.O. Brady and his destroyed eyeglasses, but claims that there was no investigation into his claims. (*Id.*) Plaintiff stated that he was attaching "a number of exhibit(s) of grievances . . . ." (*Id.*)

As an exhibit to the complaint, plaintiff attached a document entitled: "Inmate Grievance Complaint," dated April 27, 2017, complaining about his fall down the stairs and the alleged beating in the medical building. (Compl. at 25). In this grievance, plaintiff identified defendant Brady, but referred to defendant Reynolds as "John Doe." (Compl. at 25). In the grievance, plaintiff also described a prior incident with defendant Brady, which allegedly occurred on April 5, 2017. (*Id.*) Plaintiff then stated that he suffered from bilateral foot issues and severe neurological damage in his lower extremities. At the end of the grievance, plaintiff stated that because of his medical issues, the beating, and the misbehavior report, written to "justify beating," he wished to be transferred to a "Disabled Facility." (*Id.*) The grievance indicates that copies went to "RS/Filed," "Court of Claims," "U.S.C. 42 1983," and "Family." (*Id.*) However, there are no further documents attached to plaintiff's complaint that relate to this grievance, and there is no stamp on the document which indicates that it was ever received by the IGRC.

With his complaint, plaintiff also included a letter that he wrote to D.S.A. Peacock on May 5, 2017 regarding the April 25th incident. (Compl. at 26). In the letter to D.S.A. Peacock, plaintiff complained that it had been one week since the incident, that he filed a grievance, but that there had been no investigation, nor had he been

8

informed of the second officer's name.[4] Plaintiff's statements in the letter are a little unclear, but it appears that he was asking for an investigation "and/or" that the incident be "put . . . behind us . . . ." Plaintiff stated that he was "willing to cooperate with [the] administration," and asked D.S.A. Peacock to "drop the Tier III fraudulent disciplinary infraction 'Bull' . . . ." (Compl. at 27). There were no further documents attached to plaintiff's complaint that were associated with the alleged April 27th grievance.

Defendants argue that if the alleged assault occurred on April 25, 2017, and even if plaintiff had filed the grievance on April 27, 2017, he could not possibly have exhausted his administrative remedies by the time that he signed his federal complaint on May 5, 2017 or by the time the complaint was filed on May 10, 2017.

In the declaration of IGP Supervisor Hale, he states that the Great Meadow IGP "has no record of any grievance filed by inmate Scott relating to his allegations that he was subjected to excessive force or harassment on April 5, 2017 or April 25, 2017 by defendants Brady or Reynolds." (Hale Decl. ¶ 49 & Ex. A). Grievance records indicate that plaintiff filed two grievances on April 17, 2018, and then did not file another grievance until May 16, 2017. (Hale Decl. Ex. A). The May 16, 2017 grievance was entitled "Retaliation for Grieving." (*Id.*) Plaintiff's next grievance was dated June 16, 2017 and was entitled "Cane and Medical Boots." (*Id.*)

Plaintiff's complaint in this action was signed on May 5, 2017 and received by

---

[4] The court notes that there is clearly a typographical error in the letter because plaintiff refers to an "accidental fall 5/25/17." (Compl. at 26). However, he must be referring to the April 25th incident because the letter is dated May 5, 2017.

the court on May 10, 2017.[5]  Plaintiff could not have, and did not, completely exhaust his administrative remedies prior to filing this action.  Even if plaintiff completed the exhaustion process after he filed the action, the court would still be constrained to recommend dismissal for failure to exhaust.  The entire appeals process must be completed prior to filing. *See Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (citing *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) (subsequent exhaustion after suit is filed is insufficient), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)).  Thus, plaintiff has failed to exhaust his administrative remedies with respect to his claims of excessive force as against defendants Brady and Reynolds.[6]

Although, as stated above, exhaustion may still be excused if the administrative remedies were "unavailable" or if defendants' actions prevented plaintiff from utilizing or completing those procedures.  *Ross*, 136 S. Ct. at 1859-60.  The administrative remedy process was available to plaintiff in this case, and it is clear that he used the

---

[5] Plaintiff mentions the alleged assault in an appeal of Grievance No. GM-61,903-17, dated May 15, 2017. (Hale Decl. Ex. F).  Oddly, Grievance GM-61,903-17 was initially filed in March of 2017, long before the alleged assault took place, so the initial grievance could not have included facts relating to an assault that had not yet taken place.  The fact that plaintiff included the alleged assault in his May 15, 2017 appeal, to the extent that it would have been procedurally correct to do so, shows that at the time he filed this complaint on May 10, 2017, he had not exhausted his administrative remedies with respect to the assault claims because an appeal was still pending.

[6] To the extent that plaintiff might argue that the defendants' conduct formed the basis of his disciplinary hearing, and an appeal of the disciplinary hearing would have been sufficient to exhaust his administrative remedies, he would also be incorrect. *See Waters v. Melendez*, No. 9:15-CV-805, 2018 WL 3079764, at *7-8 (N.D.N.Y. May 18, 2018) (inmate must separately exhaust his administrative remedies through the grievance procedure, even though the disciplinary hearing may be based on the same set of facts underlying the grievance) (citations omitted) (Rep't-Rec.) (adopted 2018 WL 3069209 (N.D.N.Y. June 21, 2018).  In addition, in this case, as stated above, plaintiff filed this action ten days after the incident and did not have had time to have his disciplinary hearing and exhaust those remedies.

grievance procedure multiple times for many other grievances.[7] (Hale Decl. & Ex. A). Plaintiff also cannot claim that the defendants prevented him from using the grievance procedure in this instance because there was insufficient time for them to do so. Thus, plaintiff's failure to exhaust his administrative remedies may not be excused.

### 2. ADA/RA Claims

Plaintiff's surviving claim under the ADA and/or RA is that he was denied a "reasonable accommodation" for his "disabilities." The PLRA exhaustion requirement applies to cases brought by inmates under either of these federal statutes. *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 442-43 (S.D.N.Y. 2004). Defendants argue that plaintiff has also failed to exhaust his administrative remedies with respect to his ADA and/or RA claims. This court agrees with defendants.

Plaintiff filed various grievances which are related to his medical condition/ disability claims. (Statement of Material Facts ("SOF") ¶ 54 (Dkt. No. 47-1); Hale Decl. Ex. A). These include: (1) GM-61903-17 - "Recreation Restriction," filed on March 9, 2017; (2) GM-61935-17 - "Transfer to a Facility with Handicap Accessible Areas," filed on March 21, 2017; (3) GM-62018-17 - "Treatment for Legs and Feet" filed on April 17, 2017; (4) GM-62218-17 - "Cane and Medical Boots," filed on June 15, 2017; and (5) GM-62239-17 - "Wants ADA Items" on June 23, 2017. (*Id.*)

The last two grievances - GM-62218-17 and GM-62239-17 would not be relevant to exhaustion in this case because the grievances themselves were not filed until after this action was filed. Thus, the court must examine the first three grievances

---

[7] The records indicate that between March and August of 2017, plaintiff filed 24 grievances at Great Meadow. (Hale Decl. ¶ 12 & Ex. A).

11

listed above to determine whether plaintiff exhausted his administrative remedies relative to the issues he raises in this action.

Plaintiff's first grievance dealing with the restriction on his recreation was filed on March 9, 2017. He filed a second grievance on April 18, 2017, alleging that he was denied recreation, and on April 19, 2017, he filed a third grievance, also stating that he was denied recreation without cause. (Hale Decl. ¶¶ 15-17, Seguin Decl. ¶ 16, Melecio Decl. ¶ 22). The grievances filed on April 18 and 19 were consolidated with the grievance filed on March 9, 2017. (Hale Decl. ¶ 18). Plaintiff's March 9, 2017 grievance, GM-61903-17, stated that on March 4, 2017, the Block Officer on the morning shift "took it upon himself" to place plaintiff on "Restricted Recreation" without medical authorization. (Hale Decl. Ex. B).

Plaintiff stated that he had three medical permits: to be locked on the "flats;" to be fed in-cell; and to have a walking cane. (*Id.*) Plaintiff stated that there was no mention of restricted recreation "by medical permit dated 2/24/17."[8] (*Id.*) Plaintiff claimed that he had a constitutional right to recreation, and that he was being "punished" for being a "qualified disabled inmate."[9] (*Id.*) Plaintiff then stated that, as a "Federal[ly] funded facility," if Great Meadow was "not equipped" to "accommodate" a

---

[8] A second page which looks very similar to the first has some slightly different language in it. (Hale Decl. Ex. B at 2). This grievance, which is also dated March 4, 2017 and in plaintiff's handwriting, indicates that it was filed on March 6, 2017, states that plaintiff's medical permits did not mention restricted recreation "nor" did they mention "no climbing stairs." (*Id.*) Plaintiff's request was that he be afforded "all 'Programs' and 'Services' . . . and/or a T.V. . . . or to be transferred." (*Id.*)

[9] The court notes that this grievance would also be related to plaintiff's third claim - that he was subjected to cruel and unusual punishment due to the lack of recreation for more than seventy days. For the same reasons that plaintiff's ADA/RA claim is unexhausted, plaintiff's constitutional challenge to the denial of recreation would also be unexhausted.

"qualified disabled inmate," then he should be transferred to a facility that could accommodate him with all the appropriate "services" and "programs" in accordance with the ADA and the RA. (*Id.*)

The "Case History and Record" for this grievance contains a summary of the grievance and the "action requested."[10] (Hale Decl. Ex. C). The Superintendent's Response is dated May 25, 2017. (*Id.*) (*See also* Pl.'s Ex. E-2) (Dkt. No. 34-2 at 19) (Superintendent's Response to GM-61,903-17). In her declaration, Rachael Seguin, the Assistant Director of the IGP, included a list of grievances that plaintiff has appealed to the CORC. (Seguin Decl. ¶¶ 12, 13 & Ex. A). As shown in Exhibit A to the Seguin Declaration, plaintiff appealed the Superintendent's adverse decision, and plaintiff's appeal was received by the CORC on June 5, 2017. (Seguin Decl. ¶ 17 & Ex. A). As of March 18, 2018, the CORC had not issued a decision on plaintiff's appeal. (Seguin Decl. ¶ 18 & Ex. A at 1). As stated above, plaintiff filed this action on May 10, 2017, even before he received the Superintendent's decision.

The next grievance pertaining to plaintiff's ADA/RA claims was GM-61935-17, entitled "ADA Transfer to Handicap Accessible Facility." (Seguin Decl. ¶ 19 & Ex. A at 1). Plaintiff filed this grievance on March 21, 2017, and that the CORC received the plaintiff's appeal of the Superintendent's decision on May 26, 2017. (Seguin Decl. ¶¶ 19-20). As of March 18, 2018, the CORC had not issued a decision on plaintiff's appeal. (Seguin Decl. ¶ 21 & Ex. A at 1).

Plaintiff filed another grievance on April 17, 2017, entitled "Treatment for Legs/Feet." (Seguin Decl. ¶ 22). The CORC received plaintiff's appeal of the

---

[10] The transfer request was not included in this summary of the action requested.

Superintendent's decision on May 31, 2017. (Seguin Decl. ¶ 23 & Ex. A at 1). As of March 18, 2018, the CORC had not issued a decision on the appeal. (*Id.*) On June 15, 2017 plaintiff filed GM-62218-17, entitled "Cane & Medical Boots," and on June 23, 2017, plaintiff filed GM-62239-17, entitled "Wants ADA Items." (Seguin Decl. ¶¶ 25, 28). The CORC received plaintiff's appeal for GM-62218-17 on July 21, 2017, and the appeal for GM-62239-17 on August 3, 2017. (Seguin Decl. ¶¶ 25, 26, 28, 29 & Ex. A at 1). The CORC had not issued a decision on either grievance when the Seguin Declaration was signed. (Seguin Decl ¶¶ 27, 30).

Because plaintiff filed his federal action *before* he completed the appeals of any of the grievances relating to his federal claim, he has failed to exhaust his administrative remedies with respect to any of his ADA/RA claims and with respect to his related constitutional challenge to the denial of recreation.

Plaintiff has submitted materials relative to the summary judgment motion. However, based on some of his arguments, he appears to misapprehend the procedure employed by the court in "converting" the defendants' motion. When the defendants filed their motion to dismiss, they included various exhibits. (Dkt. No. 28). When plaintiff filed his response to the defendants' motion to dismiss for failure to state a claim, (Dkt. No. 34), he also included exhibits. (*Id.*) In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court could not have considered material outside the complaint, with some exceptions. Although some of the materials included in the motion to dismiss could potentially have been considered in conjunction with such a motion, in order to consider all the responses and exhibits filed by both parties, the court converted the motion to one for summary judgment and allowed both parties to

14

submit additional argument. This procedure is specifically authorized in the Federal Rules. Fed. R. Civ. P. 12(d). Thus, the court may consider the information submitted by both plaintiff and defendants.

Plaintiff now argues that the defendants have failed to show that the plaintiff's remedies were "available," and that the CORC has taken over thirteen months to decide his appeals. (Dkt. No. 51 at 1-3). The plaintiff is correct that if the IGRC, the Superintendent or the CORC fail to provide a timely response, plaintiff may appeal to the next level. *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (citing 7 NYCRR §§ 701.6(g)(2), 701.8(g)). However, plaintiff in this case did not wait until the time for the CORC to decide had run before filing this action. In fact, the CORC did not receive any of plaintiff's appeals of the grievances discussed above until after he filed this action. Plaintiff must file his federal action after he *completes* the appeal procedure and he receives a decision or the time listed in the regulations for a response by the CORC has expired and no extensions have been given. Plaintiff filed a multitude of grievances. Clearly, the remedies were "available" at the time that he filed his federal action.

The exhibits submitted by plaintiff only reinforce this court's findings. On April 25, 2017, plaintiff signed his appeal to the Superintendent from the IGRC response to GM-61,935-17. (Pl.'s Ex. A) (Dkt. No. 34-2 at 2). On May 3, 2017, Grievance Supervisor, A. Kuinlan sent a Memorandum to the IGRC which stated that "[p]er medical records, a request for reasonable accommodation (requesting to be sent to a facility with handicap accessible cells and showers and with out stairs) has been submitted to medical for review by Dr. Karandy." (Pl.'s. Ex. B-1) (Dkt. No. 34-2 at 4).

15

Plaintiff has included the Request for Reasonable Accommodation, dated April 25, 2017. (Pl.'s Ex. B-3) (Dkt. No. 34-2 at 6). On June 5, 2017, Dr. Karandy recommended a flats facility. (*Id.*) Plaintiff indicated on the form that he "disagreed" with the determination because he needed a "handicap" facility for a disabled inmate. (*Id.*)

Plaintiff's exhibits show that his appeals were either ongoing or had not been filed as of the date that he filed this action. In fact, some of the grievances that arguably relate to his medical condition were not filed at all until after this action was filed. Thus, since the court has been able to consider all the evidence, it is clear that plaintiff failed to exhaust his administrative remedies with respect to any of his ADA/RA claims. Plaintiff also asks in his recent submission that the court "stay" the action. However, the case law makes it clear that the court may not stay the action. The court ***must dismiss*** a prematurely filed action, and plaintiff may file again after he exhausts his administrative remedies.[11] *Neal v. Goord, supra.*

---

[11] Although the court is not making any findings on the merits in this case due to plaintiff's failure to exhaust, the court notes that defendants have filed substantial documentation, indicating that plaintiff's request for accommodation -submitted April 25, 2017 - was addressed in a timely manner and fully investigated. Dr. Karandy concluded that plaintiff was an appropriate candidate for transfer to a "flats" facility on June 5, 2017. (Karandy Decl. ¶¶ 14-17). Dr. Karandy also determined, based on plaintiff's medical condition, that walking to the recreation yard would have been difficult and could have been dangerous for plaintiff. (Karandy Decl. ¶¶ 26). The doctor stated that it was the good-faith opinion of the medical staff that plaintiff's "medical needs necessitated restricted navigation of the stairwell to ensure his safety and well-being." (Karandy Decl. ¶ 26). It was not possible at Great Meadow to access the recreation yard without traveling up two flights of stairs and down one additional flight, together with the remainder of the general population "moving in concert." (*Id.* ¶ 25). The "reasonable accommodations" afforded to plaintiff included residing in a first floor cell, being provided meals in his cell, the use of a cane, and the use of medical boots. (*Id.* ¶¶ 19, 27 & Ex. E). Plaintiff was also placed on a no lifting restriction. (*Id.*) DSS Malecio states that the doctor's recommendation was issued June 5, 2017, and plaintiff was "referred to an Unscheduled Transfer Review" based on Dr. Karandy's recommendation **on June 6, 2017.** (Malecio Decl. ¶ 33 & Exs. I, J). On June 7, 2017, DSS Malecio approved the request for reasonable accommodation and "sought the generation of a Request for Transfer to a "flats" facility. (Malecio Decl. ¶ 36 & Ex. G). However, plaintiff "disagreed" with the determination and noted "Handicap Facility" on the form. (Malecio Decl. ¶ 37 & Ex. G). Because plaintiff disagreed with the recommendation, the request was sent to DOCCS

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' converted motion for summary judgment (Dkt. No. 28) be **GRANTED**, and the action be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 25, 2018

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

Office of Diversity Management for review. (*Id.*) DSS Malecio states that he reviewed plaintiff's second request for reasonable accommodation on July 21, 2017. (*Id.* & Ex. H). While the request was again approved, plaintiff continued to object because he believed he needed a handicap facility, and noted that he would grieve again. (*Id.* ¶ 45). The appeal was again sent to the DOCCS Office of Diversity Management. (*Id.* ¶ 46). At the time, plaintiff was still serving an SHU sentence (related to the April 25th incident. Plaintiff was ultimately transferred to a "flats facility" on August 15, 2017. (Malecio Decl. ¶ 48 & Ex. L).